IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JASON GORMAN,  )
            Plaintiff,  )
  v.  )  Case No. 13-2246-RDR
CITY OF OLATHE, KANSAS, et al.,  )
            Defendants.  )

## MEMORANDUM AND ORDER

Plaintiff filed a complaint on May 22, 2013 alleging that he was terminated from his job as a police officer without a name-clearing hearing in violation of the Due Process Clause of the Constitution and 42 U.S.C. § 1983. Defendants are: the City of Olathe, Kansas; J. Michael Wilkes, the City Manager for Olathe; and Steve Menke, the Chief of Police for Olathe. This case is before the court upon defendants' motion to dismiss and plaintiff's motion to amend.

The motion to dismiss, which the court shall treat as a motion for summary judgment, raises a statute of limitations issue. The motion to amend seeks to obviate that issue, which is whether plaintiff filed this action within two years of learning that he had been denied a name-clearing hearing in relation to his job termination. The original complaint asserted erroneously that defendants failed to give plaintiff a name-clearing hearing in "March 2012." Defendants filed their motion to dismiss asserting that the actual date was March 7,

2011 and, thus, plaintiff's § 1983 claim is untimely because it was filed more than two years after the claim accrued.[1] Plaintiff has filed a motion to amend the complaint to allege that he was denied a name-clearing hearing on August 11, 2011, which is within two years of the date plaintiff filed this action. Defendants oppose plaintiff's motion to amend on the grounds of futility. After careful review, the court concludes that the proposed amendment is futile and that this case should be dismissed because plaintiff knew or should have known of the alleged due process violation more than two years before filing this lawsuit and because there are no grounds recognized in Kansas for tolling the limitations period.

I. SUMMARY JUDGMENT STANDARDS

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a). The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). From this viewpoint, the court attempts to determine whether a reasonable jury could return a verdict in favor of the

---

[1] There is no dispute that a two-year limitations period applies to plaintiff's § 1983 claim. See Brown v. Unified Sch. Dist. 501, 465 F.3d 1184, 1188 (10th Cir. 2006).

2

non-moving party. <u>Bones v. Honeywell Int'l, Inc.</u>, 366 F.3d 869, 875 (10th Cir. 2004). "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." <u>Piercy</u>, 480 F.3d at 1197. In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim. <u>Adams v. Am. Guar. & Liab. Ins. Co.</u>, 233 F.3d 1242, 1246 (10th Cir. 2000).

II. UNCONTROVERTED FACTS

The following facts appear to be uncontroverted. After his February 8, 2011 dismissal as a City of Olathe police officer, plaintiff filed an "appeal request" on February 15, 2011. The "appeal request" asked for reinstatement, backpay and restoration of benefits. On the same day, in a letter referencing plaintiff's "appeal of termination," plaintiff's attorney sent a letter to defendant Wilkes, the City Manager, asking for various documents and demanding that plaintiff's "name-clearing hearing" comply with due process requirements. Thus, it appears that from the beginning that plaintiff combined his appeal of his termination with his request for a name-clearing hearing. The letter asked for a hearing during the week of March 7, 2011.

In response, on February 18, 2011, defendant Wilkes informed plaintiff's attorney that city regulations required the hearing to be conducted by March 2, 2011, that no further documentation would be provided and that city appeal procedures did not permit legal representation of any party during the hearing process. On February 25, 2011, plaintiff's counsel replied with a letter that accused Wilkes of failing to follow the document production policies used in previous appeals involving police officers and of failing to follow due process requirements.

On March 1, 2011, plaintiff's attorney again wrote to defendant Wilkes demanding various materials he deemed extremely important to plaintiff. The letter referenced "Appeal of Termination of Officer Jason Gorman" at the beginning and the body of the letter used the terms "due process hearing" and "name-clearing hearing." The correspondence stated that because defendants had not provided the necessary information to plaintiff, plaintiff would not participate in a hearing scheduled on March 2, 2011.

Plaintiff did not appear at the March 2, 2011 hearing and plaintiff was informed via a letter by the hearing officer, Chris Kelly, that the hearing regarding his "appeal" commenced without his appearance and then was continued to March 7, 2011. Mike Price, an assistant city attorney, wrote plaintiff's

attorney on March 3, 2011 and warned that if plaintiff failed to appear on March 7, 2011 "the hearing will be closed and no further appeal will be heard."

On March 4, 2011, plaintiff's attorney wrote referencing "Appeal of Termination of Officer Jason Gorman" that plaintiff, "who is a member of the Army Reserve, has been activated, and will be going on active duty . . . March 6, 2011" and therefore "cannot be present for the hearing which is currently scheduled for . . . March 7, 2011." The letter referred to the hearing as a "due process hearing." As it turned out, plaintiff did <u>not</u> deploy on March 6, 2011. But, plaintiff decided not attend the March 7, 2011 hearing because his attorney had already written that plaintiff would not be present at the hearing.

On March 7, 2011, Chris Kelly, the hearing officer, wrote to plaintiff, acknowledging his absence from the hearing and requesting:

> In order to substantiate your absence from the hearing it is requested that a copy of the March 6th 2011 military deployment orders be provided to the City. If a copy of the orders is provided in a timely manner the appeal hearing will be continued to a future date after your return. If a copy of the orders is not provided to the City, your recourse via this appeal hearing will be forfeited.

Also on March 7, 2011, Mike Price, the assistant city attorney wrote to plaintiff and his attorney referencing the "Appeal of Termination of Officer Jason Gorman." This letter stated in part:

5

    This letter is a follow-up to your letter and our telephone conversations of Friday, March 4. In your letter you stated that Mr. Gorman could not attend his appeal hearing scheduled for 8 am Monday, March 7th as his deployments orders had been moved up to March 6, 2011. You asked that he be placed on administrative leave until his return from military orders.
    . . . I informed you that the City would not place Mr. Gorman on administrative leave, but would allow Mr. Gorman to request his post termination hearing within 60 days of his return from active duty. I also informed you that the City needed a copy of Mr. Gorman's military orders. You later telephoned me and left a voice message that Mr. Gorman had informed you that his orders accelerating his deployment were verbal. I returned your call and stated to you that I had served 22 years in the Kansas National Guard and I was aware that no one deployed on verbal orders. I stated that the City needed a copy of the orders preferably before the scheduled hearing time, but not later than Monday or Tuesday, March 7th or 8th. I further informed you that unless the City received a copy of the orders, the hearing would not be continued and Mr. Gorman would not be afforded any further opportunity to appeal his termination.
    Olathe Police Department personnel contacted Major Parker the officer in charge of SFC Gorman's pending deployment. In response to an email regarding SFC Gorman's deployment date, Major Parker, in a telephone conversation and in a follow-up email stated SFC Gorman will deploy sometime in September 2011 and will be required to attend pre-mobilization training in July or August 2011.
    Sergeant Haldeman contacted Mr. Gorman by telephone at his home Monday morning. The purpose of Sergeant Haldeman's telephone call was to ask Mr. Gorman about the Olathe Police Department property he needs to turn in. Mr. Gorman answered the phone and discussed the missing property with Sergeant Haldeman.
    <u>Since Mr. Gorman did not depart on Sunday as the City was informed and will not depart until July or August 2011, the City will consider Mr. Gorman's request for an appeal as a closed matter. No further hearings will be scheduled on this matter.</u>

(emphasis added).

On July 14, 2011, plaintiff's attorney wrote to defendants' attorney in reference to plaintiff's "Appeal of Termination of Officer Jason Gorman" and began by stating:

> This letter is being written in response to your correspondence of March 7, 2011, wherein you indicated that the City rejected Officer Gorman's request for a name-clearing hearing that comports with due process. My response to your letter has been delayed due to communication difficulties with our client from his deployment to Afghanistan.

The letter demanded a "name-clearing hearing" within 60 days of plaintiff's return from Afghanistan and made other demands regarding the procedures which should be employed. On August 11, 2011, counsel for the City of Olathe responded that plaintiff had misinformed the City as to his unavailability to participate in the hearing scheduled for March 7, 2011 and that on that date the City had informed plaintiff's attorney that "the City would not grant any further hearings." The letter further stated:

> Since my letter of March 7, 2011 the City has received information that the military unit Mr. Gorman was to deploy to Afghanistan with was not his own and in fact the unit did not deploy. If Mr. Gorman was deployed since then it does not change the fact that Mr. Gorman never supplied the City with copies of his orders; was available on March 7, 2011 to participate [in] the hearing he requested and misinformed the City as to his status.
>    The City's decision of March 7, 2011 stands. The City will not afford Mr. Gorman any further opportunities to participate in a hearing.

Plaintiff was a member of the Kansas Army National Guard and was scheduled to deploy to Afghanistan at some point in

7

2011. Plaintiff learned of an opportunity to deploy earlier if he worked for a military contractor named AECOM. Plaintiff chose this opportunity. But, his counsel erroneously described the details of his deployment when communicating with city representatives. Plaintiff asserts that he was initially informed that he would deploy with AECOM on March 14, 2011, but then was verbally informed that the deployment date would be advanced to March 6, 2011. On or around March 4, 2011, plaintiff was informed that the date of deployment would be delayed to March 13, 2011.

Plaintiff alleges that sometime after March 7, 2011 he served more than 76 days in Afghanistan where his appearance and duties were indistinguishable from that of U.S. Army personnel. He returned to the United States only for brief intervals and completed his service in Afghanistan on or around April 1, 2013. Plaintiff alleges that he had an "emergency essential" status while in Afghanistan and that his ability to communicate and work with his counsel was severely impaired by his preparations for and service with the military contractor in Afghanistan.

III. PLAINTIFF'S CLAIM WAS UNTIMELY FILED.

Plaintiff makes two arguments against defendants' motion to dismiss and against the contention that plaintiff's motion to amend is futile. Plaintiff contends, first, that he filed the complaint within two years of learning that defendants would not

provide him with a name-clearing hearing. Second, plaintiff contends that the limitations period should be equitably tolled because plaintiff was unable to pursue his claim since he was serving as an employee of a military contractor for the Department of Defense in Afghanistan. We reject these arguments for the following reasons.

A. Plaintiff's § 1983 action accrued on March 7, 2011.

The critical date for determining when the limitations period began to run in this case is when plaintiff knew or should have known that his constitutional rights were violated. Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004). Plaintiff contends that he appealed his termination as a police officer and that he separately asked for a name-clearing hearing. Doc. No. 18, p. 9. He asserts that he was willing to combine the appeal and the name-clearing hearing as long as he received the due process to which he was entitled. Id. He claims that he learned his request for an "appeal" was a "closed matter" on March 7, 2011, but that he was not aware that he was not going to receive the name-clearing hearing until August 11, 2011. Id. at p. 11. This contention, however, is belied by the communication from plaintiff's counsel on July 14, 2011 which expressly states counsel's understanding that the City had rejected plaintiff's request for a name-clearing hearing on March 7, 2011. There is no evidence that a window for a name-

9

clearing hearing was left open after March 7, 2011 or that plaintiff could reasonably entertain such an understanding after March 7, 2011. Throughout the correspondence between the parties, the appeal request, the name-clearing hearing request and the due process hearing request were considered as one matter. When plaintiff was informed on March 7, 2011 that the appeal request was considered a closed matter and that there would be no further hearings scheduled, a reasonable person would know that his alleged right to due process had been denied. Thus, the two-year limitations period began running more than two years before plaintiff filed this lawsuit. See Rosenstein v. City of Dallas, 876 F.2d 392, 396 (5th Cir. 1989)("An employer's denial of an employee's request to appeal the employer's discharge decision, which rested on guilt of the stigmatizing charge, is a denial of a name-clearing hearing unless the employer specifically notifies the employee of the availability of an alternative procedure, which will provide the employee with a public forum to clear his name before the governing body that discharged him.").

Plaintiff also alleges that he was not aware that his right to a hearing was foreclosed on March 7, 2011 because the hearing officer, Chris Kelly, left open the possibility that the City would conduct a hearing upon plaintiff's return from Afghanistan if plaintiff could produce his March 6, 2011 deployment orders.

10

Plaintiff, however, did not produce those orders, which the assistant city attorney demanded by March 7 or March 8. Indeed, according to plaintiff, the orders were verbal and could not be produced. So, according to the Kelly's letter, plaintiff's appeal hearing was forfeited. This was confirmed when the assistant city attorney wrote to plaintiff, indicating displeasure that plaintiff did not attend the March 7, 2011 hearing when plaintiff was available to do so, and concluding that no hearings on the matter would be conducted. Although plaintiff did not deploy until March 13, 2011, neither he nor his attorney contacted the City about the matter again until the July 14, 2011 letter which affirmed that the City had denied plaintiff's request for a name-clearing hearing on March 7, 2011. Accordingly, the court finds nothing in Mr. Kelly's letter which leaves any doubt on this record that plaintiff was informed on March 7, 2011 that there would be no name-clearing hearing or hearing on his appeal.

B. <u>The limitations period was not tolled by plaintiff's service in Afghanistan.</u>

The court finds that there is no material issue of fact to support a claim of equitable tolling. Because a Kansas statute of limitations is borrowed to provide the limitations period under 42 U.S.C. § 1983, the court also applies the equitable tolling rules of Kansas. <u>Wallace v. Kato</u>, 549 U.S. 384, 394

11

(2007); Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.) cert. denied, 549 U.S. 1059 (2006). We note that in general, equitable tolling is considered a "rare remedy to be applied in unusual circumstances." Wallace, 549 U.S. at 396. In Kansas, equitable tolling has been applied in situations: where a defendant has acted or withheld material knowledge to induce a delay in the filing of a cause of action. Friends University v. W.R. Grace & Co., 608 P.2d 936, 941 (Kan. 1980). This is often labeled equitable estoppel. See Baker v. Board of Regents, 768 F.Supp. 1436, 1439 (D.Kan. 1991). Equitable tolling has also been applied in Kansas where administrative exhaustion or the pendency of other legal proceedings prevents a lawsuit from being filed (Wagher v. Guy's Foods, Inc., 885 P.2d 1197, 1204-06 (Kan. 1994); Keith v. Schiefen-Stockham Ins. Agency, Inc., 498 P.2d 265, 273 (Kan. 1972)), and otherwise when a party is effectively prevented from exercising a legal remedy (see Sladen v. Sixta, 825 P.2d 119, 125 (Kan. 1992)(delay caused by clerk's error in addressing an alias summons not charged to plaintiff). None of these grounds are alleged to exist on this record.

Plaintiff has the burden of establishing a basis for equitable tolling. Baker, supra. Here, plaintiff has not alleged or demonstrated grounds sufficient to invoke equitable tolling under Kansas law. Plaintiff was represented by counsel and, according to the July 14, 2011 letter, had authorized his

12

counsel to file a lawsuit. According to plaintiff's affidavit, he returned to the United States for "brief intervals" before concluding his work as a contractor in Afghanistan approximately April 1, 2013. Under these circumstances, the court does not believe his deployment to Afghanistan effectively prevented him from filing a timely lawsuit in this case.

Plaintiff urges the court to follow the "policy" set forth in the Servicemembers Civil Relief Act of 2003 (SCRA). Under this statute, in order to enable servicemembers to devote their entire energy to the defense needs of the Nation, "the period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court." 50 App. U.S.C.A. § 526(a). A "servicemember" is defined as "a member of the uniformed services, as that term is defined in section 101(a)(5) of title 10, United States Code." 50 App. U.S.C.A. § 511(1). The term "uniformed services" is defined to mean "the armed forces" or the commissioned corps of the National Oceanic and Atmospheric Administration or the Public Health Service. 10 U.S.C.A. § 101(a)(5). The "armed forces" is defined to mean "the Army, Navy, Air Force, Marine Corps, and Coast Guard." 10 U.S.C.A. § 101(a)(4). Thus, employees of military contractors do not fall within the definition of "servicemember" and are not

covered by the SCRA. In re Gaddy, 2004 WL 2044107 *3-4 (Bkrtcy.D.Kan. 4/12/2004).

Plaintiff admits that he does not have the statutory protection of "armed forces" personnel under the SCRA. Doc. No. 18, p. 15. Nevertheless, plaintiff argues that equitable tolling should apply because his duties and service to his country were so similar to that of armed forces members. For the purposes of this order, the court shall grant that plaintiff's conduct and service in Afghanistan were comparable to that of armed services personnel. But, the court does not believe this similarity is a sufficient extraordinary or exceptional circumstance for a Kansas court to equitably toll the running of a statute of limitations.

IV. PLAINTIFF'S MOTION TO AMEND SHALL BE DENIED AS FUTILE.

It is well-established that leave to amend may be denied if the complaint, as amended, would be subject to dismissal. Jefferson County Sch. Dist. v. Moody's Investor's Services, 175 F.3d 848, 859 (10th Cir. 1999). Here, plaintiff seeks leave to amend the complaint to allege that plaintiff was denied a name-clearing hearing on August 11, 2011. This amendment is futile because the complaint as amended would still be subject to dismissal because plaintiff was first denied a name-clearing hearing on March 7, 2011 – more than two years before he filed this action – and there are no good grounds to toll the running

14

of the limitations period. The August 11, 2011 denial of a hearing merely repeated the position taken on March 7, 2011. So, the limitations period would not start over again on August 11, 2011. See Delaware State College v. Ricks, 449 U.S. 250, 261 (1980)(limitations periods normally commence when the employer's decision is made and are not tolled by the pendency of a grievance or request to review the decision); Almond v. Unified Sch. Dist. No. 501, 665 F.3d 1174, 1179 (10th Cir. 2011) cert. denied, 133 S.Ct. 317 (2012)(same).

V. CONCLUSION

In summary, defendants' motion to dismiss (Doc. No. 6), treated as a motion for summary judgment, shall be granted. Plaintiff's motion to amend (Doc. No. 11) shall be denied. Plaintiff's motion for oral argument (Doc. No. 25) shall also be denied.

**IT IS SO ORDERED.**

Dated this 5th day of November, 2013, at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge